Steven J. Reisman, Esq.
Jerry L. Hall, Esq.
Cindi M. Giglio, Esq.
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY 10122
Telephone: (212) 940-8800
Facsimile: (212) 940-8876
sreisman@katten.com
jerry.hall@katten.com
cindi.giglio@katten.com

*Counsel to the Foreign Representative*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 |
| NYGARD HOLDINGS (USA) LIMITED, et al.,[1] | Case No. 20-10828 (___) |
| Debtors in a Foreign Proceeding. | Joint Administration Requested |

**DECLARATION OF GILLES BENCHAYA IN SUPPORT OF (I) VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING AND RELATED RELIEF AND (II) MOTION OF THE FOREIGN REPRESENTATIVE FOR PROVISIONAL RELIEF IN AID OF A FOREIGN MAIN PROCEEDING**

I, Gilles Benchaya, on behalf of Richter, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America, as follows:

1. I am a Senior Vice President of Richter Advisory Group Inc. ("Richter"). Richter, is the court-appointed receiver (the "Receiver") and authorized foreign representative (the

---

[1] The Debtors in these Chapter 15 cases, along with the last four digits of each Debtor's U.S. Federal Employer Identification Number ("FEIN") or Canada Revenue Agency Business Registration Number ("CRA"), are: Nygard Holdings (USA) Limited (FEIN 3048), Nygard Inc. (FEIN 0509), Nygard NY Retail, LLC (FEIN 1672), Fashion Ventures, Inc. (FEIN 0956), Nygard International Partnership (FEIN 1535), Nygard Properties Ltd. (CRA 0003), Nygard Enterprises Ltd. (FEIN 7127), 4093879 Canada Ltd. (FEIN 1533), 4093887 Canada Ltd. (FEIN 1534).

"Foreign Representative")[2] of:

(a)     Nygard Holdings (USA) Limited ("Holdings");
Nygard Inc. ("Inc.");
Nygard NY Retail, LLC ("NY Retail"); and
Fashion Ventures, Inc. ("Fashion") (collectively, the "U.S. Debtors"); and

(b)     Nygard International Partnership ("International");
Nygard Properties Ltd. ("Properties");
Nygard Enterprises Ltd. ("Enterprises");
4093887 Canada Ltd. ("4093887"); and
4093889 Canada Ltd. ("4093889") (collectively, the "Canadian Debtors," and together with the U.S. Debtors, the "Debtors").

2. Each of the Debtors was placed in a receivership on March 18, 2020 by order (the "Receivership Order") of the Court of Queen's Bench Manitoba (the "Canadian Court"), Court File No. CI 20-01-26627 (the "Canadian Proceeding"), entered under *The Courts of Queen's Bench Act* of the Province of Manitoba and the *Bankruptcy and Insolvency Act* of Canada (the "BIA").

3. I am a Chartered Professional Accountant, a Chartered Insolvency and Restructuring Professional, a Licensed Insolvency Trustee in Canada, and a Certified Turnaround Professional. I hold a Bachelor of Commerce from HEC Montreal. For over 20 years, I have provided advice to senior representatives of debtors, creditors, and other key stakeholders in a variety of Canadian, U.S., and cross-border restructuring situations. I have significant experience in the retail sector. I have been a key member of the teams that have acted in engagements such as Bombay & Co Inc., Bowring & Co Inc., Benix & Co Inc., Nine West Canada, Grafton-Fraser Inc., Mexx International, Betsy Johnson, Inc., Crabtree & Evelyn Canada, Inc, and Body Central Corp.

---

[2]     Richter acts in these chapter 15 cases solely in its capacity as Receiver and Foreign Representative.

2

4. Prior to the commencement of the Canadian Proceeding and its appointment as Receiver, in February 2020, Richter was contacted by counsel to White Oak Commercial Finance, LLC, as administrative agent and collateral agent (the "Agent") for White Oak Commercial Finance, LLC and Second Avenue Capital Partners, LLC, as lenders (the "Lenders"), to act as the Agent's financial advisor in connection with the Agent and the Lenders' Credit Facility (defined below) with the Debtors. I have assisted in the engagement for Richter as Receiver since its appointment. In this capacity, I have investigated the business and affairs of the Debtors to the best of my ability, and based on the records of the Debtors as same exist, I make this declaration based on that investigation. I am authorized to submit this declaration on behalf of the Debtors, and if called upon to testify, I would testify competently to the facts set forth herein.

5. I submit this declaration in support of the *Verified Petition Under Chapter 15 for Recognition of a Foreign Proceeding and Related Relief* (the "Verified Petition", and together with the Forms of Voluntary Petition [Dkt 1], the "Petition") and the *Motion of the Receiver as Authorized Foreign Representative for Entry of an Order Granting Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code*, filed contemporaneously (the "Provisional Relief Motion"). I have reviewed the Petition and the Provisional Relief Motion, and it is my belief that the relief sought therein is necessary and appropriate to preserve, protect, and realize upon the Debtors' assets located within the territorial jurisdiction of the United States for the benefit of the Debtors' creditors.

6. The Debtors, with various non-debtor entities respectively organized under the laws of the United States, Canada, and other jurisdictions (collectively, the "Nygard Group"), comprise a clothing designer, manufacturer, supplier and retailer with its head office located in Winnipeg, Manitoba, Canada, which acts as the "nerve center" of the Debtors' businesses. Substantially all

3

accounting functions, strategic decision making, communications functions, marketing and pricing decisions, new business development initiatives, negotiation of material contracts and leases, IT services, retail, services, design, merchandising, production, and distribution functions are managed centrally from the head office in Winnipeg. The Nygard Group also has offices in New York City, Shanghai (where its Research and Design teams are based), Los Angeles, California (where its U.S. logistics operations are based), and Toronto (where its International Sales and Marketing team is based). It has three distribution centers located in Los Angeles (leased), and Toronto and Winnipeg (both owned by Properties). The Nygard Group sources inventory from third-party garment manufacturers in Jordan, Bangladesh, Indonesia, Vietnam, and China. The Nygard Group has multiple product lines and fashion brands, including Peter Nygard Collections, Bianca Nygard, Nygard SLIMS, ALIA, ADX, and TanJay. The Nygard Group employs approximately 1,450 people worldwide, of whom approximately 100 are located in the United States. The Nygard Group operates 167 retail stores in Canada and 2 retail stores in the United States, and, upon information and belief, supplied other retailers such as Dillard's Inc. ("Dillard's") and Costco Wholesale Canada Ltd. ("Costco") until recently.

7. The Debtors and the other entities comprising the Nygard Group are 100% privately owned and controlled by Peter J. Nygard, either directly or through a series of holding companies.

8. The Debtors are parties to a Credit Agreement dated as of December 30, 2019 (the "Credit Agreement") with the Agent and the Lenders, pursuant to which, among other things, the Lenders agreed to make formula-based revolving loans to the U.S. Debtors not to exceed $40,000,000, secured by liens and/or security interests in substantially all personal property of the U.S. Debtors, and guaranteed by the Canadian Debtors secured by substantially all of their personal property and certain real property located in Canada (the "Credit Facility"). Among other things,

4

the Credit Agreement is governed by the laws of the State of New York, and contains a forum selection clause in which the Debtors submitted to the jurisdiction of federal and state courts located in New York County, New York, with respect to any proceedings arising out of or related to the Credit Agreement, and waived objections to the venue of such courts with respect to such proceedings.

9. Almost immediately after closing the Credit Facility on or about January 3, 2020, the Debtors committed various events of default under the Credit Agreement, and among other things provided the Agent and the Lenders with cash flow forecasts and funding requests that contemplated a cash need that was several millions of dollars in excess of the amount available pursuant to the Credit Agreement's borrowing base calculation. The Agent and the Lenders, with the assistance of Richter and despite limited cooperation from the Debtors and their principal Peter Nygard, made significant efforts to understand the Debtors' increased funding needs and potential solutions for the Nygard Group's liquidity crisis.

10. In the midst of the above, the Lenders learned that Peter Nygard and several of U.S. Debtors had been sued in a class action lawsuit in the United States District Court for the Southern District of New York captioned *Jane Does Nos. 1-10, individually and on behalf of all others similarly situated, v. Peter J. Nygard, Nygard Inc., Nygard International Partnership, and Nygard Holdings Limited,* case no. 1:20-cv-01288 (the "Class Action Lawsuit"). The Class Action Lawsuit alleges, among other things, that Mr. Nygard raped and sexually assaulted multiple children and women and that the defendant U.S. Debtors knowingly aided and abetted him in a decades-long sex-trafficking scheme. The Debtors advised the Agent of this class action lawsuit nearly one week after its issuance, in further breach of the Credit Agreement. A week later, on February 25, 2020, a Federal Bureau of Investigation and New York Police Department task force

5

raided the Nygard Group's New York City offices in connection with an investigation into sex trafficking. Later that day, Mr. Nygard publicly announced that he would resign from the Nygard Group and divest his interest therein. The same day, the Nygard Group's largest customer, Dillard's, released a public statement that it had refused current deliveries, canceled all existing orders and suspended all future purchases from the Nygard Group. Dillard's termination of its relationship with the Nygard Group constituted yet another event of default under the Credit Agreement.

11. On February 26, 2020, White Oak delivered to the Debtors a demand for repayment and notice of intention to enforce its rights against its security pursuant to section 244 of the BIA (the "Demand and Section 244 Notice"). The Demand and Section 244 Notice specified the existing and continuing events of default known to the Agent and demanded the full payment of the outstanding indebtedness in the amount of $25,870,783.37.

12. On March 18, 2020, the Canadian Court entered the Receivership Order. The Foreign Representative was appointed as receiver of all assets, undertakings, and properties of the Debtors pursuant to section 101 of the Courts of Queen's Bench Act of the Province of Manitoba and section 243(1) of the BIA.

13. The Receivership Order vests the Foreign Representative with broad power and control over the Debtors' assets and businesses, including by granting the Foreign Representative express and sole authority to control the Debtors' businesses and administer the Debtors' assets. Richter anticipates that the Canadian Court will issue orders that will allow Richter to monetize the Debtors' assets in a value-maximizing manner. The Receivership Order also provides that the Debtors' creditors are enjoined from taking action against the Debtors and their assets, wherever located. Receiver Order at ¶ 12-14.

14. The Foreign Representative seeks provisional relief under chapter 15 of the Bankruptcy Code to ensure the orderly liquidation or other value maximizing disposition of the Debtors' assets located within the territorial jurisdiction of the United States, recognition of the Canadian Proceeding as the "foreign main proceeding" of the Debtors, and certain related relief. This relief is necessary to enjoin future creditor enforcement action, to protect the Debtors' assets in the United States (including a distribution center holding approximately $13 million of inventory at cost), and to promote the orderly liquidation of the Debtors' assets for the benefit of the Debtors' creditors.

15. The Foreign Representative anticipates that the Canadian Court will issue orders that will allow Richter to monetize the Debtors' assets in a value-maximizing manner, including but not limited to orders authorizing the sale or liquidation of the Debtors' assets. The Receiver anticipates that the Canadian Court will issue orders directing the sale, liquidation, or other disposition of the Debtors' assets, but because certain of the Debtors' assets are within the jurisdiction of the United States, the Receiver seeks recognition as the Foreign Representative to, among other things, recognize and give effect in the United States, to the orders of the Canadian Court.

16. The relief requested in the Provisional Relief Motion is also necessary to empower the Receiver to take control of, and ensure appropriate measures are taken to protect, the Debtors' properties and assets and to enjoin creditors from commencing or continuing actions against the Debtors in the United States, excepting the Class Action Lawsuit. The relief requested in the Provisional Relief Motion is necessary to avoid immediate and irreparable harm to the Debtors if creditors or contract counterparties "race to the courthouse" or resort to self-help remedies, resulting in a piecemeal and preferential distribution of the Debtors' assets.

17. It may also be necessary for the Foreign Representative to operate the Debtors' businesses on a partial or temporary basis, to protect and preserve assets and maximize the value of Debtors' estates for all creditors. Accordingly, the relief requested in the Provisional Relief Motion also includes provisional authority for the Receiver to operate the Debtors' businesses and administer their assets and affairs in the United States, to the extent necessary pending recognition.

18. For the reasons stated in this Declaration, in the Petition, and the Provisional Relief Motion, I respectfully request that the Petition and the Provisional Relief Motion be granted in their entireties, together with such other and further relief as the Court may deem just and proper.

19. I certify under penalty of perjury of the laws of the United States of America that each of the statements in this declaration is true and correct.

Dated: March 18, 2020
      New York, New York       RICHTER ADVISORY GROUP INC.
                                       (solely in its capacity as Receiver and Foreign
                                       Representative for the Debtors)

                                       By: */s/ Gilles Benchaya*
                                       Giles Benchaya, Senior Vice President